**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**RICHARD GLENN,**

     **Petitioner,**

**v.**　　　　　　　　　　　　　　　　**Case No. 4:13cv617-WS/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

     **Respondent.**

_____/


## REPORT AND RECOMMENDATION

On November 12, 2013, Petitioner Richard Glenn, an inmate

proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  ECF No. 1.  On July 3, 2014, Respondent filed a response,

with exhibits.  ECF No. 14.  Petitioner did not file a reply, although given the

opportunity to do so.  *See* ECF No. 13; *see also* ECF Nos. 4, 7, 9, 11.

---

[1] The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

## **Procedural Background**

On April 3, 2010, Petitioner was charged with the following crimes, in connection with events that took place between February 23, 2008, and February 24, 2008: Count I, lewd or lascivious molestation, in violation of section 800.04(5)(c)2, Florida Statutes; Count II, possession of a firearm by a convicted felon, in violation of section 790.23(1)(a), Florida Statutes; Count III, aggravated assault with a firearm, in violation of sections 775.087 and 784.021(1)(a), Florida Statutes; and Counts IV and V, two counts of felony battery, in violation of section 784.03(2).  Ex. A.[2]  On July 19, 2010, at jury selection, the trial court granted Petitioner's motion to sever Count II. Ex. B.  After a jury trial held July 23, 2010, Petitioner was found guilty of lewd or lascivious molestation (Count I) and not guilty on all other counts. Ex. C at 139.  On August 13, 2010, Petitioner was sentenced to 67 months in prison.  Ex. E at 9.

Petitioner appealed his judgment and sentence to the First District Court of Appeal (DCA).  Ex. G.  On March 16, 2011, while this appeal was pending, Petitioner filed a motion to correct sentencing errors in the trial court pursuant to rule 3.800(b)(2), Florida Rules of Criminal Procedure.  Ex.

---

[2] Hereinafter, all citations to the state court record, "Ex. -," refer to exhibits submitted with Respondent's answer, ECF No. 14.

H.  On April 15, 2011, the state court issued an order correcting Petitioner's sentencing errors.  Ex. I.  The sentencing documents were changed to reflect these corrections on April 21, 2011.  Ex. J.

On April 28, 2011, appellate counsel for Petitioner filed an <u>Anders</u> brief, which included a section discussing the trial court's decision to reopen the State's case.  Ex. K.  On May 9, 2011, Petitioner was given thirty days to file a pro se initial brief, but he did not file a brief.  Ex. L.  On November 28, 2011, the First DCA affirmed Petitioner's judgment and sentence per curiam without a written decision.  Ex. M.  The mandate issued December 28, 2011.  *Id.*; <u>Glenn v. State</u>, 75 So.3d 722 (Fla. 1st DCA 2011) (table).

On May 21, 2012, Petitioner filed a motion to set aside his judgment and sentence pursuant to Rule 3.850, Florida Rules of Criminal Procedure.  Ex. N.  On November 6, the state post-conviction court denied Petitioner's Rule 3.850 motion.  Ex. Q.  Petitioner appealed this denial to the First DCA.  Ex. R.  On February 11, 2013, the First DCA affirmed the state court decision per curiam without a written opinion.  Ex. S.  The mandate issued March 11, 2013.  *Id.*; <u>Glenn v. State</u>, 108 So.3d 1082 (Fla. 1st DCA 2013) (table).

As indicated above, Petitioner filed the instant petition on November 12, 2013.  ECF No. 1.  Petitioner raises two grounds: (1) the state court decision was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding; and (2) the state court decision was based on an unreasonable application of clearly established law as determined by the Supreme Court of the United States. *Id.* at 7, 18.  On July 3, 2014, Respondent filed a response, with exhibits. ECF No. 14.  Petitioner did not file a reply, although given the opportunity to do so.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under the first provision, it is not enough for a prisoner to show that a state court decision was "incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 511 (2003).  In order to obtain habeas corpus relief, he must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." Harrington v Richter, 562 U.S. 86, 103 (2011).  Under the second provision, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 324 (2003).

"This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

## **Exhaustion**

Respondent argues that Petitioner did not properly exhaust his claim in state court before filing the instant petition.  ECF No. 14 at 9-18. Petitioner here argues that the "trial court departed from its position of neutrality by prompting the prosecutor to reopen the state's case[] after the state had rested, to have the state's witness present additional testimony after the state failed to prove [a] substantial element of crime in front of the jury, thus warranting reversal."  *Id.* at 7.  Petitioner did raise this claim in Issue One of his Rule 3.850 motion.  Ex. N.  The state court found that Petitioner's claim of prejudicial error was procedurally barred because he did not raise it on direct appeal.  Ex. Q at 1.  As noted above, the <u>Anders</u> brief includes a section discussing the trial court's decision to reopen the State's case; however, Petitioner did not file a brief on direct appeal specifically raising this point.  *See* Ex. K at 26-27.  The state court, however, did find that Petitioner's claim of fundamental error was not procedurally barred, and ruled on the merits.  *Id.*  Accordingly, to the extent Petitioner raises the same claim here, it appears that Petitioner did exhaust his claim in state court.

## Merits of Grounds 1 and 2[3]

In his § 2254 petition, Petitioner argues that the state court's decision to deny Issue One of his Rule 3.850 motion was based on an unreasonable determination of the facts in light of the evidence presented, as well as an unreasonable application of clearly established law as determined by the Supreme Court of the United States.  ECF No. 1 at 7, 18.   In support of his claim, Petitioner referenced the following portion of the trial transcript:

> THE COURT:  Everybody be seated.  Do you want to be heard, Mr. Higgins?
>
> MR. HIGGINS:  Yes, Your Honor.  At this time[, t]he defense would like to move for a judgment of acquittal, Your Honor, on Counts I, III, IV, and V, Your Honor.
>
> I don't believe the State has made a prima facie case so far, Your Honor, particularly with Count I, when the victim herself has apparently denied the allegations herself, and with regard to Count III, which was the count regarding Ms. Streeter.  Ms. Streeter specifically stated that, quote, I didn't really have a reaction with regard to when the gun was allegedly pulled on her.  And she said –
>
> THE COURT:  I'm going to deny as to the aggravated assault and the battery charges.
>
> Let's talk about Count I, the lewd and lascivious.  I think there is a serious issue there.  Let's discuss that.

---

[3] Petitioner bases both grounds of the instant petition on Issue One of his Rule 3.850 motion.  *See, e.g.,* ECF No. 1 at 7, 18; Ex. N at 5.  Each ground of the instant petition involves one of the provisions of § 2254(d), so this Court will address them together.

MR. HIGGINS:  Yes, Your Honor.  I don't believe the State has made a prima facie case.  The victim herself has stated that this did not happen.  I don't believe there were any witnesses outside of Ms. Streeter.  And even Ms. Streeter said she didn't – she didn't see any private parts.  And under the charge the State has to prove that Mr. Glenn unlawfully and intentionally touched in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks.  She did not state any of that.

I think it's fairly clear the State has not laid a prima facie case for Count I.

THE COURT:  Ms. Walters?

MS. WALTERS:  Judge, based upon Ms. Streeter's comments that she had indicated when I had her describe what she meant by him being on top of her, she indicated that Darnisha's legs were open and Mr. Glenn was in between them, that he was unclothed on the top and she could not tell what they were doing, I believe that there's prima facie to at least – enough of an inference to at least go to the jury and let them decide as to what was actually taking place.

THE COURT:  Let's refer to the jury instructions, as Mr. Higgins did.  Tell me under Element 2 what you think there is a prima facie case to present to the jury as specifically provided in Element 2 of the instruction.

MS. WALTERS:  Judge, again, I think that Mr. Glenn's body being in between – being in between the victim's legs and her legs being spread apart and Ms. Streeter indicated that they were having sex.

THE COURT:  Would show what?

MS. WALTERS:  Would show that, in fact, he was touching in a lewd or lascivious manner the genital area of Ms. Gordon.

And also the statement made by the victim about it was her legs, that she could do what she wanted with them.  I believe

there is, again, the inference that there was, in fact, something going on.

THE COURT:  Well, obviously, there's something going on.  For some reason or another, y'all both decided not to ask Ms. Streeter what she meant by – what she based the fact that they were having sex on.  So we're left to kind of speculate on that.

Her description of it is she cannot see their body area because they were covered with a blanket.  She can't see whether they're dressed or not dressed.  She does say that they were having sex.  We don't have any explanation of how she arrived at that conclusion.

We do have a statement from the alleged victim that she did not have sex.  What would Ms. Streeter say?  Did y'all depose Ms. Streeter?

MR. HIGGINS:  Yes, I think we did.

THE COURT:  What would she say as to how she arrived at the conclusion that they were having sex?

MS. WALTERS:  It doesn't appear she was directly asked the question in deposition either.

THE COURT:  Have you talked to her, Ms. Walters?

MS. WALTERS:  Have I spoken to her?  Yes.

THE COURT:  What would she say as to how she arrived at that conclusion?

MS. WALTERS:  Her comments to me are that they were going at it.  And she says that, well, her legs were open and – I mean that's kind of how she describes it to me.  I don't think – I guess, based upon me knowing what she was arriving at, I never asked her specifically how she arrived at that conclusion.  The way that she's always described it to me is that Darnisha's legs were open, he was on top of her, and they were going at it.  And I said,

well, what do you mean by that?  And she said, they were having sex.

THE COURT:  I think we need to have a little more than that.  I'm going to give you an opportunity to talk to her and see whether you feel like you want to request to reopen and give more explanation of how she arrived at that conclusion.

I know it's embarrassing for everybody, but it's not something we can ignore.  If we didn't have a denial by the victim, then I would certainly let it go to the jury.  But a very conclusory statement that is somewhat refuted by her description of what happened and a denial by the victim, I don't think as it stands is sufficient.  I'll give you an opportunity to talk to her and see if you feel like you can make it a little more concrete as to how she arrived at that conclusion.  We will give you a few minutes.  Why don't we take five minutes and let you talk to her?  I assume she's still here.

MS. WALTERS:  Yes.

(RECESS)

THE COURT:  Do you desire the opportunity to reopen, Ms. Walters?

MS. WALTERS:  Yes, sir.

THE COURT:  All right.  Do you want to be heard on that, Mr. Higgins?

MR. HIGGINS:  Yes, Your Honor.  For the record, I'm going to object.  I believe that the State has made their case.  They have closed their case.  We've heard all the evidence in terms of Ms. Streeter.  I think it's clear there's not a prima facie case, even taken in the light most favorable to the State, with regards to this case.  So I object to this case being reopened.

THE COURT:  Well, I'll overrule that objection.  It's within the discretion to allow the reopening.  It's a very close situation and

before the Court intervenes by dismissing charges, I want to give the State every opportunity to appropriately present their case. I don't think the defense is prejudiced by them being given that opportunity. So I will allow them to reopen.

Are you going to have testimony, Mr. Higgins?

MR. HIGGINS:  I'm not sure now. [Darnisha] is still out there?

MS. WALTERS:  She is.

MR. HIGGINS:  Most likely I will not, but I can't honestly say right now.

THE COURT:  Well, it's going to happen pretty quickly after this witness.

MR. HIGGINS:  Yes, I know. Most likely, I will not, Your Honor. I'm going to confer with Mr. –

THE COURT:  Well, okay. Let's have the jury, please.

MS. WALTERS:  Judge, would you like me to make the request in front of the jury?

(JURY IN BOX)

THE COURT:  I have allowed the State to briefly reopen their case to clarify one point, so there's going to be some brief additional testimony by the State.

Come on up, Ms. Streeter. You remain under oath. Just state your name again for the record, please.

THE WITNESS:  Laquanda Streeter.

THE COURT:  You may proceed, Ms. Walters.

Whereupon,

was called as a witness, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. WALTERS:

Q:  Ms. Streeter, before you had indicated that [Darnisha] and Mr. Glenn were having sex.  How do you know they were having sex?

A:  Well, when I walked in the room, I seen him going forwards and backwards.  That's how I knew they were having sex.

Q:  Okay.  And her legs, you said, were spread apart.  How were they positioned on the bed?

A:  Feet on the bed, legs like – her feet were bent – her legs were bent.

Q:  Okay.  Where was Mr. Glenn in relation to her legs?

A:  In between them.

Q:  And he was going back and forth where?

A:  Between her legs.

Q:  Is there anything else that led you to believe they were actually having sex?

A:  No.

MS. WALTERS:  Okay.  Nothing further.

THE COURT:  All right.  Cross?

MR. HIGGINS:  May I inquire, Your Honor?

## CROSS-EXAMINATION

BY MR. HIGGINS:

Q:  Ms. Streeter, didn't – strike that.  When you were in the bedroom and you saw Mr. Glenn and [Darnisha], did you see any of their private parts?

A:  No.

Q:  And I know this sounds like a strange question, but where was Mr. Glenn's hands?  Were they by his side or –

A:  No.

Q:  Where were they?  Could you see that?

A:  No, but I knew he was laying on top of her.

Q:  That's not what I'm asking.  Did you see Mr. Glenn's hands?

A:  No.

Q:  So all you saw was Mr. Glenn in a dark room on top of [Darnisha]?

A:  Yes.

MR: HIGGINS:  That's all the questions I have.

THE COURT:  Any redirect?

## REDIRECT EXAMINATION

BY MS. WALTERS:

Q:  Ms. Streeter, this is going to sound like a very strange question, but how would you describe the area in between your legs or Ms. Gordon's, Darnisha's, legs?

A:  As her vagina.

Q:  Okay.  And what area of Mr. Glenn's body was in the same area or moving back and forth in between Ms. –

A:  His penis.

MS. WALTERS:  Nothing further.

THE COURT:  All right.  Any juror have a question?  All right. Write down your question.

Let's go to side bar.

(BENCH CONFERENCE AS FOLLOWS)

THE COURT:  It says, "Were the covers pulled up over their bodies?"  Either side object to that?

MR. HIGGINS:  No.

THE COURT:  I think it's already been answered once, but it may be worth clarifying at this point.  I assume the defense would want me to ask that question?

MR. HIGGINS:  Your Honor, actually – well –

THE COURT:  What's that?

MR. HIGGINS:  On the record, I'm going to object because I believe that's already asked and answered.

THE COURT:  Okay, if you don't want it to be asked.

I am going to deny the motion for judgment of acquittal.  I think it's real close, but all reasonable inferences at this point have to be construed in favor of the State's case.  I think there's sufficient evidence to at least be a prima facie case.  So I'm going to deny the judgment of acquittal as to Count I.

Ex. C at 72-81.

In denying Petitioner's Rule 3.850 motion, the state court found the

following:

> Defendant claims the Court committed prejudicial and
> fundamental error by interjecting itself into the proceedings and
> encouraging the State to re-open its case in order to solicit
> additional testimony.  He argues that, but for the additional
> testimony, a judgment of acquittal would have been entered in
> his favor.  As the claim of prejudicial error could have been made
> on direct appeal, it is procedurally barred from consideration
> here.  To the extent Defendant's claim of fundamental error is
> cognizable, the Court finds that the actions at issue were a
> permissible attempt to clarify an ambiguity in a witness's
> testimony.

Ex. Q at 1-2 (citing Kirkpatrick v. State, 769 So.2d 515, 517-19 (Fla. 1st

DCA 2000)).  This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.  *See*

Cullen, 563 U.S. at 181.

The record supports the state court's findings.  *See* Ex. C at 72-81.

Petitioner argues that the trial court's statement, "It's a very close situation

and before the court intervenes by dismissing charges, I want to give the

state every opportunity to appropriately present their case," shows that the

trial court would have granted the motion for judgment of acquittal if the

State had not reopened its case.  ECF No. 1 at 12.  The trial court,

however, never indicates that it will grant the motion for judgment of

acquittal, only that it is a close call.  *See* Ex. C at 72-81.  The state post-conviction court's finding that the trial court was attempting to "clarify an ambiguity in a witness's testimony" is reasonable.  *See* Kirkpatrick, 769 So.2d at 518 ("[A] neutral fact finder may, in fact, seek additional information in order to clear up prior ambiguities or uncertainties in testimony previously presented.").  Therefore, Petitioner has not shown that the state court's ruling was an unreasonable determination of the facts in light of the evidence.  Further, Petitioner has not shown clear and convincing evidence that overcomes the presumption of correctness applied to the state court's factual determinations.  *See* Miller-El, 537 U.S. at 324.

Petitioner also has not shown that the state court's decision was based on an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Petitioner argues that "fair-minded jurists could disagree that the state court's arguments or theories are inconsistent with Strickland."  ECF No. 1 at 18 (citing Strickland v. Washington, 466 U.S. 668 (1984)).  Strickland, however, discusses the standard for a claim of Ineffective Assistance of Counsel. Strickland, 466 U.S. 668.  Petitioner has not raised a claim of Ineffective Assistance of Counsel.  Petitioner has not shown that the state court's

ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." Harrington, 562 U.S. at 103; *see* Hendrix v. Sec'y, Fla. Dep't of Corr., 527 F.3d 1149, 1153 (11th Cir. 2008) ("[T]here is no Supreme Court decision clearly establishing that an appearance of bias or partiality, where there is no actual bias, violates the Due Process Clause or any other constitutional provision."). Accordingly, Petitioner's § 2254 petition should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).

Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

Therefore, it is respectfully **RECOMMENDED** that Petitioner's § 2254 petition, ECF No.1, be **DENIED**.  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and leave to proceed in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones for Michael D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on June 24, 2016.


S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**




## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**